UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUNEE T., | Case No. 26-cv-1638 (LMP/DTS) |
| Petitioner, | |
| v. | **ORDER GRANTING HABEAS PETITION** |
| KRISTI NOEM, *Secretary, Department of Homeland Security*; TODD M. LYONS, *Acting Director, Immigration and Customs Enforcement*; and DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | |
| Respondents. | |

Daniel P. Suitor, **Daniel P. Suitor, PLLC, Minneapolis, MN**, for Petitioner.

Matthew Isihara and David W. Fuller, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Sunee T. filed a petition for a writ of habeas corpus, asserting that his immigration detention violates the Immigration and Nationality Act ("INA"), the Fourth and Fifth Amendments to the United States Constitution, and the *Accardi* doctrine. *See generally* ECF No. 1. Respondents (the "Government") oppose the petition. ECF No. 4. For the reasons below, the Court grants the petition.

## BACKGROUND

Sunee T. is a native of Laos who entered the United States as a refugee in December 2004. ECF No. 1 ¶ 24; ECF No. 7 ¶ 4. He received lawful permanent resident status in May 2006. ECF No. 7 ¶ 5. But in November 2012, Sunee T. was arrested by the

Government and served an order to show cause charging him with removability under the INA based on having committed a removable offense. *Id.* ¶ 6. On November 27, 2012, Sunee T. was ordered removed. ECF No. 7-1. He waived his right to appeal the removal order, rendering it administratively final. *See* ECF No. 7 ¶ 7; ECF No. 5-5. Laos, however, historically has refused to accept Laotian nationals ordered removed from the United States. ECF No. 1 ¶ 2; ECF No. 7 ¶ 8. As a result, Sunee T. was released from ICE custody in 2013 pursuant to an order of supervision ("OSUP"). ECF No. 7 ¶ 8; ECF No. 5-6.

On December 11, 2025, the Government once again arrested Sunee T., and he has remained in ICE custody since. ECF No. 7 ¶ 9. On December 12, 2025, an ICE agent "conducted an initial informal interview" with Sunee T. "in order to afford [Sunee T.] an opportunity to respond to the reasons for revocation" of his OSUP stated in the Notice. ECF No. 7-2. The ICE agent noted that Sunee T. made no oral or written statements in the interview. *Id.* Five days later, ICE served Sunee T. a Notice of Revocation ("Notice") of his OSUP, citing ICE's determination that "there are changed circumstances in [his] case." ECF No. 7-4. The Notice also informed Sunee T. that he would be given "an informal interview at which [he] will be given an opportunity to respond to the reasons for the revocation." *Id.* The Notice does not identify what those "changed circumstances" are. *See id.* at 1.

Sunee T. filed a petition for a writ of habeas corpus on February 25, 2026, alleging that because ICE "has not formally notified [him] that it was revoking his order of supervision, nor has ICE identified any change in circumstance to justify revocation of his order of supervision," ECF No. 1 ¶ 29, the revocation and Sunee T.'s ongoing detention

2

violate the INA, the Fourth and Fifth Amendments, and the *Accardi* doctrine,[1] *see id.* ¶¶ 47–66.

The Court ordered the Government to file a response to Sunee T.'s petition. ECF No. 4. The Government timely responded, ECF No. 6, including by filing a declaration from an ICE Deportation Officer and multiple exhibits, *see, e.g.*, ECF No. 7. According to the Government, it requested a travel document from Laos for Sunee T., Laos issued a travel document, and Sunee T. is scheduled for a return flight to Laos in "March of 2026." *Id.* ¶ 3. Sunee T. filed a reply to the Government's response. ECF No. 8.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305 (2001).

In situations where a noncitizen has been ordered removed from the United States, but ICE determines that "there is no significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(g)(1), ICE may not detain

---

[1] The *Accardi* doctrine—named for the case from which it derives, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)—"bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights." *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) (internal quotation marks omitted) (citation omitted).

the noncitizen indefinitely, *see Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001). Federal regulations require ICE instead to "promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions," typically in the form of an OSUP. 8 C.F.R. § 241.13(g)(1). However, if circumstances change such that ICE can demonstrate there is a "significant likelihood" that a noncitizen previously released subject to an OSUP "may be removed in the reasonably foreseeable future," ICE "may revoke" the noncitizen's OSUP and re-detain the noncitizen pending his removal. *Id.* § 241.13(i)(2). The regulations require ICE to notify the noncitizen of "the reasons for revocation" of his release and to "conduct an initial informal interview promptly after" his return to custody to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3).

Sunee T. asserts that ICE did not follow these procedures. *See* ECF No. 1 ¶¶ 29, 64–66; ECF No. 8 at 4–11. He notes two deficiencies with the process Sunee T. was afforded. First, Sunee T. asserts that ICE conducted the informal interview required by § 241.13(i)(3) *before* he was served with the Notice. ECF No. 8 at 5–6. Second, the Notice itself only provides "cursory, unsupported, conclusory statements" that "cannot justify the deprivation of [Sunee T.'s] liberties." *Id.* at 7.

The Government, for its part, represents that the "changed circumstances" referred to in the Notice are that "Laos recently resumed accepting its citizens for repatriation." ECF No. 6 at 6–7. The Government states that it requested a travel document for Sunee T. on January 19, 2026, which Laos has now issued, and that Sunee T. "is manifested on an upcoming scheduled charter flight" to Laos. *See* ECF No. 6 at 6. As such, the Government

4

asserts that it has "rebutted any presumption [Sunee T.] raised (or tried to raise) regarding the likelihood of his removal in the reasonably foreseeable future." *Id.* at 10. Regarding the procedural requirements of Section § 241.13(i), the Government asserts that "Sunee T. was afforded an informal interview, and did receive notice of the revocation of his Order of Supervision." *Id.* at 11.

    The fact that the Government has obtained a travel document from Laos for Sunee T. and scheduled a flight to return him to Laos certainly lends credence to its argument that Sunee T.'s removal is significantly likely to occur in the reasonably foreseeable future, if not imminently. The problem, however, is that none of that information is even suggested, much less expressly stated, in the Notice itself. As this Court has explained, 8 C.F.R. § 241.13(i)(3) "require[s] that when a noncitizen is notified of a release revocation, the 'reasons' for that revocation must be stated in the notification," and that such notice may not "merely parrot[] the regulatory text governing re-detention." *Roble v. Bondi*, 803 F. Supp. 3d 766, 771 (D. Minn. 2025). But the Notice here "provides zero reasons as to *what* changed circumstances exist[ed]" at the time it was served on Sunee T. *Id.* Indeed, the only "reasons" ICE offered in the Notice for revoking Sunee T.'s OSUP "are changed circumstances in your case." *See* ECF No. 7-4 at 1. There is no indication, for example, that ICE informed Sunee T. that it had obtained or begun the process of obtaining a travel document from Laos to effect Sunee T.'s removal—nor could ICE have made such a representation since ICE did not even request a travel document for Sunee T. until more than a month after he was detained. *See* ECF No. 7 ¶¶ 9–11.

What's more, 8 C.F.R. § 241.13(i)(3) requires the Government to provide Sunee T. with an "initial informal interview promptly," so that he may "respond to the reasons for revocation stated in the notification." The Government did, apparently, conduct that interview, but it did so *before* it served Sunee T. the Notice. ECF No. 7 ¶ 10; ECF No. 7-2. As a result, when the ICE agent conducted an informal interview with Sunee T. to provide him with "an opportunity to respond to the reasons for revocation of his [OSUP] stated in the [Notice]," ECF No. 7-2, this record provides the Court with no assurance that Sunee T. knew what "reasons" he was responding to, much less how he could attempt to rebut those "reasons."[2] *See Roble*, 803 F. Supp. 3d at 772 (explaining that a petitioner "cannot be expected to 'respond to the reasons for revocation stated in the notification' if the notification does not actually *state* any reasons for revocation").

This Court and judges in this District have held that insufficient notices of revocation like the one at issue here entitle a petitioner to habeas relief. *See, e.g.*, *id.* at 772, 774 ("Because ICE violated its own regulations when it detained Roble without notifying him of the reasons why he was being detained, Roble is entitled to habeas relief."); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 781–84 (D. Minn. 2025); *Garrison G. v. Bondi*, No. 26-cv-172 (JMB/DJF), 2026 WL 157677, at *3–4 (D. Minn. Jan. 17, 2026); *Raciel Z. P. v. Noem*, No. 26-cv-249 (KMM/SGE), 2026 WL 568266, at *4–6 (D. Minn. Feb. 13, 2026), *report and recommendation adopted*, 2026 WL 564251 (D. Minn. Feb. 27, 2026);

---

[2] The "Alien Informal Interview" dated December 12, 2025, simply states: "The detainee did not provide a written statement. The detainee did not provide any documents. Any documents provided are attached." ECF No. 7-2. No documents are attached.

*Dusan C. v. Bondi*, No. 26-cv-620 (JRT/ECW), 2026 WL 458128, at *5–6 (D. Minn. Feb. 13, 2026), *report and recommendation adopted*, 2026 WL 465534 (D. Minn. Feb. 18, 2026); *Chou T. v. Noem*, No. 26-cv-1432 (SHL/ECW), 2026 WL 607413, at *5–6 (D. Minn. Feb. 20, 2026), *report and recommendation adopted*, 2026 WL 613575 (D. Minn. Mar. 4, 2026); *Loc T. v. Bondi*, No. 25-cv-4705 (PJS/DTS), 2026 WL 592072, at *1–2 (D. Minn. Mar. 3, 2026). The facts in this case require the same outcome. Accordingly, the Court grants Sunee T.'s habeas petition and orders his release from custody as set forth below.[3]

### ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

1. Sunee T.'s Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

2. The Government is **ORDERED** to release Sunee T. from custody by no later than **5:00 p.m. on Friday, March 13, 2026**, subject to the conditions in his preexisting Order of Supervision (ECF No. 7-5); and

3. The Government is **ORDERED** to provide the Court with a status update concerning Sunee T.'s release by no later than **Monday, March 16, 2026**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 11, 2026         *s/Laura M. Provinzino*
Time: 11:19 a.m.              Laura M. Provinzino
                                         United States District Judge

---

[3] Because the Court grants relief on Sunee T.'s statutory claims, the Court need not adjudicate his remaining constitutional claims. *See United States v. Turechek*, 138 F.3d 1226, 1229 (8th Cir. 1998).